IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Eric Black, aka Clarence Simpson | ) | C/A No. 4:04-cv-22835-RBH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Coli Rushton, Warden, McCormick | ) | |
| Correctional Institution; and the State of | ) | |
| South Carolina, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

Petitioner, Eric Black ("petitioner/Black"), is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing *pro se*, filed his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [1] on November 8, 2004. Respondents filed a motion for summary judgment on January 26, 2005, along with supporting memorandum. The undersigned issued an order filed February 8, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response to respondents' motion for summary judgment on February 17, 2005.

## I. PROCEDURAL HISTORY

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the court.

The procedural history as set forth by respondents in their memorandum has not been seriously disputed by petitioner in his response. Therefore, the undersigned will set out the undisputed procedural history as set forth by respondents.

Petitioner, Eric Black, is presently confined in the McCormick Correctional Institution pursuant to commitment orders from the Fairfield County Clerk of Court. The Fairfield County Grand jury indicted him at the October 1997 term of court for armed robbery (97-GS-20-347). App. 165-66. Robert FitzSimons, Esquire, represented him. On October 23, 1997, he received a jury trial on this charge before the Honorable Paul E. Short, Jr. App. 3-76. The jury found him guilty as charged, and Judge Short sentenced him to eighteen years imprisonment. App. 78-80; 163.

Petitioner timely served and filed notice of appeal. Assistant Appellate Defender Melody J. Brown, of the South Carolina Office of Appellate Defense, represented him on direct appeal. On November 24, 1998, Ms. Brown filed a final Anders Brief of Appellant on his behalf in the South Carolina Court of Appeals and moved to be relieved as counsel. The only issue raised in the Anders Brief was stated as follows:

> Did the trial court err in failing to direct a verdict on the armed robbery charge as a matter of law when the money taken did not belong to Reginald Williams as alleged in the indictment.

The South Carolina Court of Appeals dismissed the appeal and granted counsel's request to be relieved in an unpublished Opinion filed on May 20, 1999. State v. Clarence Simpson, 99-UP-321 (S.C. Ct. App., May 20, 1999). The South Carolina Court of Appeals sent the Remittitur to the Fairfield County Clerk of Court on June 11, 1999.

Petitioner had also filed an Application for Post-Conviction Relief ("PCR") (97-CP-20-287) on December 1, 1997. App. 82-96. He raised the following grounds for relief in his Application:

2

1. Ineffective assistance of counsel

2. Prejudicial error on behalf of the prosecution.

3. False imprisonment.

App. 83; see also 87-96. The State filed a Return on January 14, 1998.

The Honorable J.C. Nicholson, Jr., held a hearing into the mater at the Fairfield County Courthouse on October 20, 1999. Petitioner was present and represented by Ross Burton, Esquire. The State was represented by Assistant Attorney General Matthew M. McGuire. App. 104-36.

Petitioner testified on his own behalf at the hearing. The State presented his trial counsel, Mr. FitzSimons. Judge Nicholson also had before him the trial transcript, the Clerk of Court's records regarding the subject convictions, petitioner's SCDC records, the Application and the State's Return. App. 97; 104-36.

On February 9, 2000, Judge Nicholson filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. App. 97-102. Petitioner did not serve and file a timely Notice of Appeal.

Petitioner subsequently filed a second PCR Application (00-0CP-20-110) on April 17, 2000. App. 138-45. He raised the following grounds for relief in his Application:

1. Ineffective assistance of counsel [because] Ross Burton unprofessionally handled my case by not appealing the decision of the [PCR court].

2. Prejudicial error on behalf of the court.

3. False imprisonment/unlawful conduct on behalf of police department.

(App. 139).

3

The State filed a Return and Motion to Dismiss on September 22, 2000. App. 144-47. Judge Short convened a hearing into the matter on March 17, 2003, at the Chester County Courthouse. Petitioner and Mr. Burton both testified at the hearing. The only issue addressed at the hearing was whether petitioner was entitled to a belated review, pursuant to Austin v. State, 409 S.E.2d 395 (S.C. 1991), of the denial of his 1997 PCR application. App. 144-47; 158-60.

Judge Short filed an Order of Dismissal and Austin Finding on May 18, 2003, in which he (1) found that petitioner did not knowingly and intelligently waive his right to appellate review of the 1997 PCR application and was entitled to belated review; and (2) summarily dismissed all other allegations, as barred by the statute of limitations governing PCR applications, S.C. Code Ann. § 17-27-45(A) (Supp. 2003) and barred because the 2000 Application was successive. App. 158-62. A timely Notice of appeal was served and filed.

Assistant Appellate Defender Robert M. Pachak represented petitioner in the PCR appeal. On September 26, 2003, Mr. Pachak filed a Petition for Writ of Certiorari and a Petition for Writ of Certiorari pursuant to Austin v. State on petitioner's behalf. There was only one question presented in the petition for Writ of Certiorari:

> Whether there was any evidence presented to support the PCR judge's findings that petitioner was denied the right to appeal the denial of his first PCR application?

There was only one question presented in the Petition for Writ of Certiorari pursuant to Austin v. State:

> Whether defense counsel was ineffective in failing to move for a mistrial after petitioner's character was put into issue?

4

On January 8, 2004, the State filed a return to Petition for Writ of Certiorari pursuant to Austin v. State. On September 24, 2004, the South Carolina Supreme Court filed an unpublished Order in which it granted the Petition for Writ of Certiorari from Judge Nicholson's Order granting Austin relief, dispensed with further briefing, reviewed Judge Nicholson's Order and denied certiorari. The Remittitur was sent to the lower court on October 13, 2004.

## II. PETITIONER'S GROUNDS FOR RELIEF

In his *pro se* Petition for Writ of Habeas Corpus, petitioner raises the following grounds for relief, quoted verbatim:

Ground One:    Prejudicial error on behalf of the court, indictment and proceedings before the grand jury.

The State's case was based entirely on circumstantial evidence. There was no direct evidence linking defendant to the crime. Therefore, defendant's credibility the main issue before the jury. Prosecutors cannot appear as sole witness before grand jury.

Ground Two:    Ineffective assistance of counsel.

Counsel did not carry out what he is supposed to do under his oath to protect to the extent of his ability the right's of defendant. Counsel lacked in responsibility of the attorney's vital role in which he plays in the administration of criminal justice.

Ground Three:   Conviction obtained by use of evidence pursuant to an unlawful arrest.

> A meaningful investigation was never conducted, and proper procedure wasn't taken in obtaining an arrest warrant.

(Petition).

### III.  SUMMARY JUDGMENT

On January 26, 2005, the respondents filed a return and memorandum of law in support of their motion for summary judgment. Petitioner responded to the motion for summary judgment.

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case

6

makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.


## IV.  STANDARD OF REVIEW

Since Black filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute now reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state court application of Supreme Court law.  See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure

of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

## V.  MERITS

### A. GROUND ONE

As set out above, in Ground One, petitioner argues that (1) the state's case was based entirely on circumstantial evidence. There was no direct evidence linking defendant to the crime; (2) petitioner's credibility was the main issue before the jury and the state erroneously placed his character in issue; and, (3) that the Assistant Solicitor or Solicitor appeared as sole witness before the Grand Jury.

Respondents argue that only parts one (1) and two (2) of Ground One were preserved for Anders review by the state court of appeals. As a result, respondents assert that only those allegations would have been considered by the state court of appeals in its Anders review of the record. Respondents assert that in part one of Ground One, petitioner alleges insufficient evidence to convict him of armed robbery. Trial counsel made a motion for directed verdict at the close of the prosecution's case and maintained that the State had failed to prove petitioner committed an armed

8

robbery. The state trial court denied his motion. Therefore, respondents argue that a challenge to the sufficiency of the evidence to convict was preserved for appellate review and would have necessarily been rejected on the merits. Respondents assert that the state courts' rejection of this allegation was not contrary to and did not involve an unreasonable application of any clearly established federal law as determined by the United States Supreme Court.

In his response to the motion for summary judgment, petitioner argues that the state sought to prove the money belonged to the victim, but the evidence at trial proved otherwise. Petitioner argues that the victim testified at trial that he knew gambling was illegal but did it anyway. Thus, petitioner argues that the money should have been forfeited as it was from betting on games. Therefore, petitioner argues that "the funds did not belong to the victim. Thus, this element as read in the indictment must necessarily fail as a mater of law; therefore, the crime of armed robbery should be dismissed as a matter of law." (Response).

When presented with an application for habeas relief, the first inquiry by the court is to determine whether the claim raised in the petition was "adjudicated on the merits" by the state court. 28 U.S.C.A. §2254(d). If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in §2254(d) applies and federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by The Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." Id. § 2254(d)(1),(2); See Williams v. Taylor, 529 U.S. at 398. If, however, "a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits .

9

. . , our review of questions of law and mixed questions of law and fact is de novo." <u>Weeks v.</u> <u>Angelone</u>, 176 F.3d 249, 258 (4th Cir. 1999).

There is limited review of sufficiency claims available in §2254 cases. <u>See Wilson v. Greene</u>, 155 F.3d 396, 405 (4th Cir. 1998). A federal court will review sufficiency claims to ensure that the prosecution presented evidence of all elements of the offense of conviction, as defined in state law. <u>See Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979) (holding that evidence established first degree murder, as defined by Virginia law.)  The court will, not, however, grant relief based on the state's own standards for sufficiency of the evidence. <u>See Wilson v. Greene</u>, 155 F.3d at 407, (declining to consider sufficiency claim based on failure to disprove all hypotheses consistent with innocence).

Petitioner was charged and convicted of armed robbery in connection with the theft of money from the victim, Reginald Williams. Williams testified at trial that he stopped by Jackson's store in Winnsboro, South Carolina, on April 12, 1997, to shoot pool and betted on the games. Williams testified that he was shooting pool with four other people and was winning. Williams testified that petitioner was also present and others called petitioner "Halloween."(App. 15-20). According to testimony, petitioner was wearing a big, blue shirt, black pants and a black hat with an emblem on it. (App. 22). Williams' Uncle, Tim Irby, came in at some point and spoke with petitioner, while Williams played another man and beat him. Petitioner left the store through a side door and the person Williams was beating in pool also left through this door for a short period. When the man returned, they shot two or three more games before the other man suddenly quit. App.  20-23. Williams testified that he paid Mr. Jackson for the games he owed, left the store and walked outside to his car. (App. 23). As soon as he got into his car, he saw someone in his mirror coming up the side of his car. Williams testified that he attempted to lock his car but missed and his assailant, whom he

identified as petitioner, snatched the door open and put a gun to his head instructing Williams to give him the money or he would blow his head off. App. 25-28. Williams testified that he gave petitioner his wallet and petitioner fled with about $140.00 or $145.00. Williams testified that the robbery occurred between 3:30 or 4:00 p.m. on a bright and sunny day and there was nothing that would have affected his ability to see what occurred. App. 30.

Timothy Irby testified that he saw his nephew, Williams, when he went to Jackson's store on April 12, 1997. Three or four other men were present at the time, including petitioner. Irby testified that he was a life long resident of Winnsboro and knew all of the men by their street names. Irby corroborated William's testimony as to how petitioner was dressed and that he and petitioner spoke. Irby testified that after watching several games of pool, he left. App. 38-45.

"Robbery" is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear.  State v. Al-Amin, 353 S.C. 405, 578 S.E.2d 32, rehearing denied, certiorari denied (S.C.App. 2003). Armed robbery is defined in South Carolina Code Ann. §16-11-330 as: Robbery and attempted robbery while armed with deadly weapon.

> (A) A person who commits robbery while armed with a pistol, dirk, slingshot, metal knuckles, razor, or other deadly weapon, or while alleging, either by action or words, he was armed while using a representation of a deadly weapon or any object which a person present during the commission of the robbery reasonably believed to be a deadly weapon, is guilty of a felony and, upon conviction, must be imprisoned for a mandatory minimum term of not less than ten years or more than thirty years, no part of which may be suspended or probation granted.  A person convicted under this subsection is not eligible for parole until the person has served at least seven years of the sentence.

Under <u>Jackson</u>, <u>supra</u>, a defendant is entitled to review only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt. Based on the testimony and evidence given at trial, the undersigned cannot find that the trial court erred in denying the motion for directed verdict on the armed robbery charge. The victim himself identified petitioner as the assailant and testified that he pointed a gun at his head and took his wallet. Thus, petitioner is not entitled to review on this issue and recommends that respondents' motion for summary judgment be granted as to this issue.[2]

In Ground One, part 2, petitioner alleges that the prosecution was erroneously allowed to attack petitioner's character when it was not in issue. Respondents argue that "assuming *arguendo* that this allegation states a claim upon which federal habeas corpus relief may be granted, respondent submits that it lacks merit and that the state courts' rejection of this allegation was not contrary to and did not involve an unreasonable application of any clearly established federal law as determined by the United States Supreme Court. § 2254(d)(1)." (Respondents' memorandum).

During trial, the victim's uncle, Tim Irby, testified that he saw petitioner at the Fairfield County Detention Center the week before trial. App. 43. Trial counsel objected to the testimony and to the line of questioning and the trial judge sustained the objection. App. 43. Following Irby's testimony, trial counsel requested and obtained a curative instruction to the jury. App. 48 and 51. The trial judge stated the following to the jury:

> Mr. Foreman, Ladies and Gentlemen, please give me your attention.
> During the trial of the case, you've heard testimony about someone

---

[2] A review of the PCR Order of Dismissal reveals that this issue was raised under an ineffective assistance of counsel claim. The PCR judge concluded that "the evidence produced at trial shows the Applicant, while armed with a pistol, took money off the victim. Therefore, the evidence satisfied the elements of armed robbery. This Court is not persuaded by Applicant's argument. Accordingly, the allegation is denied." (Tr. 100).

being at the jail. I charge you now and emphasize to you that someone
being at the jail need not imply that person is incarcerated, nor need
it cast any questions on his guilt or innocence.

App. 51.

The undersigned recommends dismissing this ground in that the allegation is one of state evidentiary law as opposed to a constitutional violation. There was an objection and a subsequent request for a curative instruction. Petitioner did not move for a mistrial or object to the adequacy of the curative charge. The decision to grant or deny a mistrial is within the sound discretion of the trial judge. State v. Cooper, 514 S.E.2d 584 (S.C. 1999). The undersigned does not find a constitutional violation that warrants federal habeas review. Therefore, the undersigned recommends that respondents' motion for summary judgment be granted as to this issue.[3]

In Ground One, part 3, petitioner argues that it was a violation to have the prosecutor as the only witness before the Fairfield County Grand Jury. First, the undersigned finds that this issue is procedurally defaulted in that it was not presented on direct appeal. Even assuming *arguendo* that the issue is not defaulted, it is not a claim that is cognizable in federal habeas corpus in that jurisdiction is a non–cognizable state law issue. Wright v. Angelone, 151 F.3d 151, 157-58 (4th Cir. 1998). Further, a state court's decision on a question of state law is binding in federal court. Estelle v. McGuire, 502 U.S. 62, (1991). Therefore, the undersigned recommends dismissal as to this issue.

## B.  GROUND TWO

---

[3] As this issue pertains to ineffective assistance of counsel, it will be discussed under Ground Two.

13

In Ground Two, the petitioner alleges ineffective assistance of counsel. Petitioner states the following in his petition with regard to this allegation:

> Counsel did not carry out what he is sworn to do under his oath to protect to the extent of his ability the rights of defendant. Counsel lacked in responsibility of the attorney's vital roles in which he plays in the administration of criminal justice.

(Petition, p.5).

Respondents argue that petitioner does not specify how counsel was supposedly ineffective. However, respondents assert that the only allegation that petitioner perfected in state PCR was the assertion that defense counsel was ineffective for failing to move for a mistrial after his character was put into issue by a witness.

In his response to the motion for summary judgment, petitioner makes several arguments with regard to ineffective assistance of counsel. However, the only issue raised to the state's highest court in the Writ of Certiorari was that counsel was ineffective for moving for a mistrial after testimony concerning his character was put into issue at trial. Thus, the other issues are procedurally barred and will not be addressed. As to the issue of mistrial, petitioner asserts the following in his response:

> During direct examination by the solicitor, states witness, Timothy Irby, began to testify concerning an encounter he and petitioner had at the Fairfield Detention Center. Counsel objected to the line of questioning and the objection was sustained. . . . Counsel was ineffective for not requesting a mistrial after the partial answer was elicited. Applicant asserts the testimony amounts to improper evidence of prior bad act or possibly character evidence. Defense counsel did not move to strike this objectionable testimony and did not move for a mistrial. This constitutes ineffective assistance of counsel.

14

> . . . The only reason to mention that petitioner was in the Fairfield
> Detention Center was to show that he was a bad person. There was no
> way to take that away from the jury's mind. Therefore, a motion for
> mistrial should have been made.

(Petitioner's response).

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). In the case of Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir. 1985) (quoting Strickland, reversed on other grounds, 476 U.S. 28 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that:

> [T]he defendant must show that there is a reasonable probability that,
> but for counsel's unprofessional  errors, the result of the proceeding
> would have been different.  A reasonable probability is a probability
> sufficient to undermine confidence in the outcome.

Strickland, at 694.

In Lockhart v. Fretwell, 506 U.S. 364 (1993), the Supreme Court clarified its definition of prejudice quoted above, stating that "an analysis focusing solely on mere outcome determination .

15

. . is defective." Instead, an appropriate analysis of prejudice should consider "whether the result of the proceeding was fundamentally unfair or unreliable." Therefore, a court analyzing the prejudice prong should not "set aside a conviction or sentence solely because the outcome would have been different but for counsel's error." See Williams v. Taylor, Nos. 98-14, 98-16, 1998 WL 883336 (4th Cir. Va. Dec. 18, 1998) (quoting Lockhart, at 369-70).

The court further held at page 695 that:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct . . . the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. (Emphasis added.)

In the present case, a thorough review of the record by the undersigned results in the undersigned's recommendation that respondents' motion for summary judgment be granted. Specifically, when petitioner's claim for habeas corpus relief is liberally construed, the petitioner does not give any supporting facts to substantiate his claims of ineffective assistance of counsel. There is nothing in the record to indicate counsel for the petitioner was ineffective. As previously discussed, Tim Irby, while testifying, stated that he saw petitioner at the Fairfield County Detention Center the week before trial. App. 43. However, trial counsel objected to the testimony and the entire line of questioning. The trial judge sustained the objection and gave a curative instruction to the jury following the witness' testimony at trial counsel's request. App. 48, and 51. At the PCR hearing, trial counsel testified that he did not believe the testimony at issue would have warranted a mistrial being granted. App. 128. The state PCR judge rejected the allegation finding that the challenged testimony did not amount to testimony implicating petitioner's character and, even if it had, the PCR judge

found that there was no reasonable probability that a mistrial would have been granted. App. 100-01.

Specifically, the PCR court found the following with regard to this issue:

> During direct examination by the solicitor, State's witness, Timothy Irby, began to testify concerning an encounter he and Applicant had at the Fairfield County Detention Center. Counsel objected to the line of questioning and the objection was sustained. App. P. 43, line 7-p. 44, line 20. Applicant now claims counsel was ineffective for not requesting a mistrial after the partial answer was elicited. Applicant asserts the testimony amounts to improper evidence of a prior bad act or possibly character evidence. The allegation is without merit.
>
> First, the portion of the testimony elicited before the jury did not amount to prior bad act or character testimony. The testimony neither addressed any prior acts by the Applicant nor explained why he was at the jail. It is speculative to believe the jury inferred a prior bad act or negative character evidence against the Applicant. It is as likely, if not more likely, the jury surmised the Applicant was in jail on the armed robbery charge being tried.
>
> Second, even if the testimony amounts to prior bad act or character evidence, Applicant was not prejudiced by counsel's decision not to request a mistrial. Considering the testimony in question, there is not a reasonable probability the trial court would have granted a mistrial based on the elicited testimony.

(Tr. 100).

Petitioner has failed to show that he was prejudiced by the testimony in light of the curative instruction given and the testimony and evidence of guilt. The record supports the PCR judge's finding that the petitioner has not demonstrated that his attorney's performance was deficient by showing that his representation fell below an objective standard of reasonableness and, further, he has not shown that the attorney's performance actually prejudiced him. As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of <u>Strickland</u> and was not based upon an unreasonable determination of facts in light of the state

17

court record, this ground is without merit. No genuine issue of material fact has been shown in regard to this issue. Strickland, supra.

A thorough review of the record by the undersigned results in the undersigned's recommendation that respondents' motion for summary judgment be granted on Ground two. The petitioner has simply put forth insufficient evidence to show that his counsel was ineffective in representing him due to his failure to move for a mistrial.

## C. GROUND THREE

Petitioner asserts in Ground Three of his habeas petition that "conviction obtained by use of evidence pursuant to an unlawful arrest. A meaningful investigation was never conducted and proper procedure wasn't taken in obtaining an arrest warrant." (Petition).

Respondents argue in their memorandum that this allegation does not state a cognizable claim for relief because South Carolina provided him the opportunity to fully and fairly raise the Fourth Amendment allegation. Further, respondents assert that this allegation was procedurally defaulted in state PCR by petitioner's failure to present it to the state courts.

The failure to raise a claim in the first state post-conviction petition as required by state law provides an adequate state procedural ground for denying federal habeas corpus relief. See Murch v. Mottram, 409 U.S. 41, 46 (1972); Bassette v. Thompson, 915 F.2d 932, 937 (4th Cir. 1990), cert. denied, 499 U.S. 982 (1991); Waye v. Murray, 884 F.2d 765, 766 (4th Cir. 1989); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th Cir. 1988), cert. denied, 485 U.S. 1000 (1998). Similarly, if a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for

relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, 501 U.S. at 750. The procedural default doctrine and its attendant "cause and prejudice" standard are grounded in comity and federalism concerns. Id. at 730-31. These principles apply whether the default occurred at trial, on appeal, or on state collateral attack. Murray v. Carrier, supra.

Thus, a prisoner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing properly to preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Id. at 489-97. The comity and federalism principles underlying the doctrine of exhaustion of state remedies require an ineffective-assistance claim to be presented to the state courts as an independent claim, before it can be used to establish cause for a procedural default. Id. at 489. The doctrine's purposes would be frustrated if federal review were available to a prisoner who had presented his claim in state court, but in such a manner that the state court could not, under its procedural rules, have entertained it. Id.

In Matthews v. Evatt, 105 F.3d 907 (4th Cir. 1997), the Fourth Circuit Court of Appeals set forth the exhaustion requirements under Section 2254:

> In the interest of giving state courts the first opportunity to consider alleged constitutional errors occurring in a defendant's state trial and sentencing, a §2254 petitioner is required to
> "exhaust" all state court remedies before a federal district court can entertain his claims. Thus, a federal habeas court may consider only those issues which have been "fairly presented" to the state courts .
> . .

> To satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner.
>
> The exhaustion requirement, though not jurisdictional, is strictly enforced . . .

Id. at 910-911 (citations omitted).

In order to exhaust his claims in state court, a South Carolina petitioner must file an application for relief under the South Carolina Post Conviction Procedure Act, S.C. Code Ann. §§ 17-27-10 to 17-27-160. "Exhaustion includes the filing of an application, the rendering of an order adjudicating the issues, and petitioning for, or knowingly waiving, appellate review." Gibson v. State, 495 S.E.2d 426, 428 (S.C. 1998).

If a petitioner before a federal court fails to raise a claim in state court and is precluded by state procedural rules from returning to state court to raise the issue, he has procedurally by-passed his opportunity for relief in state courts. In such a case, the exhaustion requirement is technically met, but a federal district court is barred from considering the habeas claim, absent a showing of cause and actual prejudice. Coleman v. Thompson, supra. Furthermore, in the absence of cause and prejudice, the petitioner must show that he is factually "actually innocent" in order to have his claim heard on collateral review. Bousley v. United State, 523 U.S. 674, 622-24. "To establish actual innocense, petitioner must demonstrate that, 'in light of all the evidence,' it is more likely than not that no reasonable juror would have convicted him." Id. At 623 (quoting Schlup v. Delo, 513 U.S. 298, 327-328 (1995) (quoting Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 160 (1970)).

After reviewing, the transcripts and evidence, the undersigned agrees that these issues are procedurally defaulted in that the petitioner did not raise these issues to the state's highest court. Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). A petitioner must demonstrate cause for his state court default of any federal claim, and prejudice therefrom, before the federal habeas court will consider the claim's merits. Counsel's ineffectiveness in failing to properly preserve a claim for state court review will suffice as cause, but only if that ineffectiveness itself constitutes an independent constitutional claim. Murray, supra. In a § 2254 proceeding, a petitioner cannot rely on ineffective assistance as cause for a procedural default without first exhausting the ineffective assistance claim in state proceedings. Edwards v. Carpenter, supra. The petitioner has not exhausted these claims of ineffective assistance. Thus, it has not been exhausted in state proceedings. Therefore, petitioner cannot rely on ineffective assistance of counsel for cause to overcome procedural default. Without cause, the undersigned does not look at prejudice. The petitioner has not shown that he is factually "actually innocent" in order to have his claim heard on collateral review. Bousley v. United States, supra.

Furthermore, a federal court will not grant habeas relief based on a Fourth Amendment violation if "the State has provided an opportunity for full and fair litigation" of the claim. Stone v. Powell, 428 U.S. 465, 482 (1976).

Based on the above reasons, it is recommended that Ground Three be dismissed as it is procedurally barred from habeas review. Once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. <u>Kornahrens v. Evatt,</u> <u>supra.</u> The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See</u> <u>Karsten v. Kaiser Foundation Health Plan</u>, <u>supra</u>. Once a court has determined that a claim is procedurally barred, it should not stray into other considerations. Therefore, it is recommended that Ground Three be dismissed as procedurally barred.

## VI.  CONCLUSION

Based on the reasons set out above, it is RECOMMENDED that respondents' motion for summary judgment (document # 7) be GRANTED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 23, 2005
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**

22